UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WILLIAM A. PARKS              :
                             :
                             :
v.                           :   CIV. NO. 3:09CV1162 (HBF)
                             :
MARSHALL SEGAR,              :
OFFICER T. LYNCH, and        :
GREGG JACOBSON               :
                             :

RULING ON MOTION FOR SUMMARY JUDGMENT

Plaintiff William A. Parks brings this civil rights action
pursuant to 42 U.S.C. § 1983, alleging that Officers Marshall
Segar, Todd Lynch, and Gregg Jacobson deprived him of
constitutional rights secured by the Fourth Amendment to the
United States Constitution.[1] Defendants are sued only in their
individual capacities.  [Doc. #37, Amend. Compl. At ¶4].

Pending is a Motion for Summary Judgment filed by Gregg
Jacobson, a police officer in the Town of Montville. Jacobson
argues that (1) plaintiff cannot prevail on claims of excessive
force because the undisputed facts show that Jacobson did not
use force against plaintiff, and was not in a position to
prevent other officers from subjecting plaintiff to excessive

---

[1] Plaintiff contends defendants subjected him to an unreasonable
search and seizure and used unreasonable force in connection
with an arrest.  Amend. Compl. at ¶13. He further alleges that
defendants had a duty to intervene to protect plaintiff from the
unlawful actions and failed/refused to perform such duty. Id.
¶6.

1

force; (2) he is entitled to summary judgment on plaintiff's improper search and seizure claims because undisputed exigent circumstances justified Jacobson's actions; and (3) in the alternative, he is shielded from plaintiff's improper search and seizure claims by the doctrine of qualified immunity.

For the reasons that follow, defendant's Motion for Summary Judgment **[Doc. # 74]** is **GRANTED** in part and **DENIED** in part.

<u>Standard of Law</u>

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. <u>See</u> <u>D'Amico v. City of New York</u>, 132 F.3d 145, 149 (2d Cir. 1998); <u>see</u> <u>also</u> <u>Anderson v. Liberty Lobby</u>, Inc., 477 U.S. 242, 247–48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  The non-moving party may not rely on conclusory allegations or unsubstantiated speculation. <u>See</u> <u>D'Amico</u>, 132 F.3d at 149. Instead, the non-moving party must produce specific, particularized facts indicating that a genuine factual issue exists. <u>See</u> <u>Wright v. Coughlin</u>, 132 F.3d 133, 137 (2d Cir. 1998).  To defeat summary judgment, "there must be evidence on which the jury could reasonably find for the [non-movant]." <u>Anderson</u>, 477 U.S. at 252, 106 S. Ct. 2505.  If the evidence produced by the non-moving party is merely colorable or is not

significantly probative, summary judgment may be granted. See id. at 249-50, 106 S. Ct. 2505.

A party opposing summary judgment may not rest on the "mere allegations or denials" contained in his pleadings. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). See also Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible). A self-serving affidavit which reiterates the conclusory allegations of the complaint in affidavit form is insufficient to preclude summary judgment. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). "The nonmovant, plaintiff, must do more than present evidence that is merely colorable, conclusory, or speculative and must present concrete evidence from which a reasonable juror could return a verdict in her favor." Page v. Connecticut Department of Public Safety, 185 F. Supp. 2d 149, 152 (D.Conn. 2002) (citations and internal quotation marks omitted).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If the plaintiff

fails to provide any proof of a necessary element of the plaintiff's case, then there can be no genuine issue as to any material fact. Id.  A complete failure to provide proof of an essential element renders all other facts immaterial. Id.; see also Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden is satisfied if it can point to an absence of evidence to support an essential element of nonmoving party's claim).

Facts

Defendant disagrees with much of plaintiff's testimony, but accepts certain allegations as true for purposes of the summary judgment motion. [Doc. #74-1 at 1].  Specifically, defendant accepts for purposes of the motion that plaintiff may have been subjected to the alleged incidences of excessive force by other officers.  Id.

Plaintiff and defendant submitted Local Rule 56(a)(1) **[Doc. #74-2, 74-3]** and Local Rule 56(a)(2) **[Doc. #77-1]** Statements, respectively.  From those documents, the Court finds the following undisputed facts.[2]

_____

[2] Plaintiff admits the facts presented in defendant's Local 56(a)(1) Statement at paragraphs 1-4; 6-12; and 14.  He disputes the facts alleged in paragraphs 5 and 15.  Where background facts are listed that were not included in defendant's Local 56(a)(1) Statement, the court cites to exhibits provided by both parties that indicate agreement.

1.   On May 15, 2009, Marshall Segar and Todd Lynch were officers in the New London Police Department, and Gregg Jacobson was an officer in the Montville Police Department. Answ. to Amend. Compl. ¶4; doc. #74, Ex. B, Jacobson Aff. ¶3.

2.   On May 15, 2009, while on duty, Jacobson was sent to see if Parks was at his home in Montville, Ct.  Jacobson Aff. ¶4. Jacobson was told that plaintiff was wanted by the New London Police Department because he had threatened to blow up the New London social security office.[3] Doc. #74-2, Def.'s 56(a)(1) Stat. ¶13-14; Jacobson Aff. ¶5.

3.   Officer Jacobson observed that plaintiff's car was parked in his driveway and notified the New London Police Department. Doc. #74-2, Ex. A, Parks Tr. 110; Jacobson Aff. ¶6.

---

[3] Neither Jacobson's Local 56(a)(1) Statement, nor his attached affidavit, states who told him that plaintiff had threatened to blow up the New London social security office.  Plaintiff does not argue that Jacobson received the information from a non-credible source, and the record suggests that Jacobson was told by some law enforcement official, from either the Montville or New London Police Department.  The Court therefore assumes for purposes of this motion that Jacobson was told by a law enforcement official.

4.  After unsuccessful attempts were made to contact plaintiff
    at his home, Officer Jacobson and Officer Lynch entered
    plaintiff's home.[4]  Parks Tr. 48; Jacobson Aff. ¶8-9.

5.  Officer Jacobson forced open a door in plaintiff's house to
    reach plaintiff. Parks Tr. 110-111; Jacobson Aff. ¶12.

6.  Officer Jacobson would have been two to four feet away from
    plaintiff during an alleged incident in which a police dog
    was given a command and subsequently bit plaintiff.[5] Def.'s
    56(a)(1) Stat. ¶2, 4-5; Pl.'s 56(a)(2) Stat. ¶5.

---

[4] The section of plaintiff's deposition available to the court
indicates that he knew that officers were outside his house but
he did not go outside to meet them. Parks Tr. 110.  Plaintiff
does not respond anywhere to defendant's assertion that
unsuccessful efforts were made to contact plaintiff before
arriving at plaintiff's house, before entering plaintiff's
house, and before forcibly entering through a door in
plaintiff's house. Jacobson Aff. ¶¶8, 11, 14.  Despite
defendant's inexplicable failure to include these facts, which
are material to his claim of exigent circumstances, in his Local
56(a)(1) Statement, defendant still properly cites to affidavit
statements when relying on these facts in his motion. [Doc. #74-
1 at 23].  Plaintiff therefore had proper notice that defendant
was using these facts to support a legal position, but did not
address them in his opposition.  Accordingly, the court
construes these facts as undisputed for purposes of the motion.
See Fed. R. Civ. P. 56(e)(2).

[5] Defendant does not admit that the dog bite actually occurred,
and in fact states that he did not witness such a bite. Jacobson
Aff. ¶16.  However, based on plaintiff's testimony, defendant
states he would have been three to four feet away from any
hypothetical attack. Def.'s 56(a)(1) Stat. ¶5.  Plaintiff denies
this because his testimony actually indicates that Officer
Jacobson could have been as close as two feet from the attack.
Parks Tr. 119-120; Pl.'s 56(a)(2)Stat. ¶5.  In his motion for
summary judgment, defendant states, "plaintiff testified that
Jacobson was three or four feet away at this time," citing to
plaintiff's testimony, in which plaintiff stated that Jacobson
was "two, three, maybe four feet away at the time." [Doc. 74-1

7.   The police dog was in control of an officer other than Jacobson. Id. at 3.

8.   Plaintiff does not know where Officer Jacobson was when plaintiff was allegedly pushed to the ground and struck with a baton enroute from his house to a police cruiser. Id. at 6-7.

9.   Plaintiff does not know where Officer Jacobson was when plaintiff was allegedly subjected to excessive force while inside Officer Jacobson's police cruiser. Id. at 8-9.

10.  Plaintiff does not know where Officer Jacobson was when plaintiff was allegedly struck in the sally port area of the New London Police Department. Id. at 10-11.

11.  Officer Jacobson was not present during an alleged incident of excessive force against plaintiff in the booking area of the New London Police Department. Id. at 12.

Discussion

1. Excessive Force

Plaintiff alleges that defendant Jacobson violated his Fourth Amendment rights five times by failing to intercede while other officers were subjecting him to excessive force.  In his first claim, plaintiff alleges that Jacobson could have interceded,

---

at 5].  The Court therefore adopts two feet as the undisputed minimum possible distance.

7

but failed to, when defendant Lynch commanded his German Shepherd to bite plaintiff in his home.  Plaintiff's remaining four claims of excessive force pertain to instances outside his home, in a police car, in the sally part of the New London Police Department, and in the booking area of the New London Police Department.  Jacobson seeks summary judgment on all five claims.

It is well settled that a police officer "has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988)(internal citations omitted).  An officer is liable for failure to intercede where the officer "observes that excessive force is being used or has reason to know that it will be used." Curley v. Village of Suffern, 268 F.3d 65, 72 (2d Cir. 2001)(internal citations omitted). "In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)(emphasis added)(citing O'Neill, 839 F.2d at 11–12). Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise. Id.

In opposing the motion for summary judgment, plaintiff alleges that Jacobson had the ability to intercede and protect plaintiff from the dog bite.  Plaintiff's motion does not address any of the four remaining claims of excessive force.

> a. First Claim of Excessive Force - The Dog Bite

Jacobson acknowledges that there are issues of disputed fact regarding whether Lynch's German Shepherd bit plaintiff. However, Jacobson argues that this is not material for purposes of summary judgment because even assuming, arguendo, that plaintiff's deposition testimony is true, a reasonable jury could not conclude that Jacobson had a realistic opportunity to intercede. Anderson, 17 F.3d at 557.

Jacobson relies on the facts in O'Neill, where a police officer did not intercede while another officer struck a handcuffed man three times.  The Second Circuit found that "the three blows were struck in such rapid succession that [the observing officer] had no realistic opportunity to prevent them," and so there was insufficient evidence to permit a jury to reasonably conclude that the observing officer's failure to intercede was a proximate cause of the beating. O'Neill, 839 F.2d at 11.

Construing the facts in a light most favorable to plaintiff, the Court must consider whether a jury could reasonably conclude that Jacobson was able to prevent the dog

bite from two feet away.  Parks Tr. 119. Plaintiff's own testimony suggests Jacobson could not.  Plaintiff testified that another officer's command "caused the dog to lurch out" and bite him for half a second to a second. Parks Tr. 119.  Therefore, by plaintiff's account, the dog attack happened even faster than the officer's attack in O'Neill, where three punches were landed; and the O'Neill attack was found to have happened so quickly that a reasonable jury would be unable to conclude that an observing officer had time to intercede.[6] See O'Neill, 839 F.2d at 11-12 (stating that the attack was not "an episode of sufficient duration to support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator").

Nor does plaintiff propose any way that Jacobson could have prevented the attack besides not calling the New London Police Department in the first place.  Parks Tr. 120.  Plaintiff's failure to offer any evidence that Jacobson could have interceded is a failure to provide any proof of a necessary element of his case.  Without such proof, there can be no

---

[6] The Court notes that neither party alleges that the time it took for the dog to react to the command was of any significant duration.

genuine issue as to any fact material to this claim.[7] <u>Celotex Corp</u>, 477 U.S. at 322-23.

Applying the Second Circuit's reasoning in <u>O'Neill</u> to an even stronger set of facts, the Court concludes that a jury could not reasonably find that Jacobson was able to prevent a dog bite lasting one second once the command was given.

On this record, summary judgment is GRANTED on the first claim of excessive force against defendant Jacobson.

b. <u>Other claims of excessive force.</u>

Plaintiff also alleges that Jacobson failed to intercede during four more instances where other officers subjected him to excessive force.[8]  Plaintiff admitted that he does not know where Jacobson was during those instances of excessive force, except for the final instance, where plaintiff admitted he knows Jacobson was not present. Pl. Local 56(a)(2) Stat. ¶¶7, 9, 11-12.

_____

[7] Plaintiff's opposition to summary judgment is also deficient in its ability to establish genuine issues of material fact concerning the dog bite.  Plaintiff denies defendant's statement that he did not witness the dog bite [Doc. # 77-1 at ¶15]; but while the fact that Jacobson witnessed the attack, and the facts contained in plaintiff's Rule 56(a)(2) Statement are indeed disputed, they are not material to the issue raised by Jacobson's motion for summary judgment, namely, whether defendant had a realistic opportunity to prevent the dog bite <u>even given those facts</u>.

[8] The four instances allege a failure to intervene when plaintiff was: 1. walking to the police cruiser; 2. sitting in the police cruiser before transport to the New London P.D.; 3. in the New London P.D. Sallyport; and 4. in the New London P.D. Booking Area.

Plaintiff's opposition does not address any of these instances, except to deny the assertion that defendant did not witness them.  Id. ¶15.  However, this denial only cites plaintiff's deposition testimony regarding the dog bite.  There is no evidence to support plaintiff's denial regarding the four other alleged instances of excessive force, and the citation does not comply with the requirements of Local Rule 56(a)(3)("[E]ach denial in an opponent's Local Rule 56(a)2 Statement, must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial").  Moreover, in the absence of specific evidence as to Jacobson's whereabouts, plaintiff's deposition testimony that Jacobson was "in the proximate area" is vague and speculative, insufficient to create a factual issue.

Accordingly, summary judgment is GRANTED in favor of Jacobson on plaintiff's remaining claims that Jacobson violated plaintiff's Fourth Amendment rights by failing to prevent the use of excessive force by other officers.

2. Improper Search and Seizure

Plaintiff alleges that Jacobson conducted a warrantless search and arrest, and inflicted unreasonable and unnecessary damage on his property, in violation of the Fourth Amendment. [Doc. #37 at 2].  Jacobson argues that a forced, warrantless entry was

12

justified by exigent circumstances.  For the following reasons, the Court finds that the undisputed facts are insufficient to form a basis for granting summary judgment as to these claims.

A search carried out on a suspect's premises without a warrant is presumptively unreasonable, unless the police can show that it falls within one of a carefully defined set of exceptions based on the presence of "exigent circumstances." Coolidge v. New Hampshire, 403 U.S. 443, 474-75, 91 S. Ct. 2022, 2042, 29 L. Ed. 2d 564 (1971)(footnote citations omitted). Similarly, a warrantless felony arrest in the home is prohibited by the Fourth Amendment, absent probable cause and exigent circumstances. Welsh v. Wisconsin, 466 U.S. 740, 751, 104 S. Ct. 2091, 2098, 80 L. Ed. 2d 732 (1984).

The Second Circuit has established six "illustrative guides" to aid in determining whether exigent circumstances exist:

> (1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) a clear showing of probable cause . . . to believe that the suspect committed the crime; (4) strong reason to believe that the suspect is in the premises being entered; (5) a likelihood that the suspect will escape if not swiftly apprehended; and (6) the peaceful circumstances of the entry.

United States v. Fields, 113 F.3d 313, 323 (2d Cir. 1997)(citing United States v. MacDonald, 916 F.2d 766, 769 (2d Cir. 1990)(en banc)).  The core question is whether the facts, as they appeared at the moment of entry, would lead a reasonable,

13

experienced officer, to believe that there was an "urgent need
to render aid or take action."  United States v. Klump, 536 F.3d
113 (2d Cir. 2008)(citing MacDonald, 915 F.2d at 769).

Jacobson argues that exigent circumstances existed to
justify warrantless entry into plaintiff's home because
plaintiff could have possessed the means to carry out his threat
to blow up the New London social security office in the time it
would have taken for Jacobson to obtain a warrant.[9]  It is
undisputed that, prior to entering plaintiff's home, Jacobson
had been told that plaintiff had threatened to blow up the New
London social security office.  It is also undisputed that
plaintiff did not respond to police efforts to contact him.

---

[9] Jacobson testified that: "[plaintiff] presented an immediate
threat because of his threats to blow up the social security
office"; "[plaintiff's] failure to respond to numerous
communication attempts by the police at his home, both prior and
after entry into the house caused me to fear for [plaintiff's]
safety also"; and "entry into [plaintiff's] house was to ensure
both [plaintiff's] own safety and that of the public." Jacobson
Aff. ¶13-15.  In his brief, Jacobson does not argue that the
need to ensure plaintiff's safety justified the warrantless
entry, even though that reason could be valid justification to
support such entry. Brigham City v. Stuart, 547 U.S. 398, 403,
126 S. Ct. 1943, 164 L. Ed. 2d 650 (2006)( "The need to protect
or preserve life or avoid serious injury is justification for
what would  be otherwise illegal absent an exigency or
emergency"). Considering this issue sua sponte in light of
Jacobson's affidavit statements, the Court finds that
plaintiff's failure to respond to police communication efforts
did not necessarily imply that his safety was at risk, and
whether Jacobson's belief was reasonable in this regard is a
question of fact for a jury.

However, Jacobson's affidavit does not provide any specific reason for why the time necessary to obtain a warrant would allow plaintiff a greater opportunity to carry out his threat. If the officers were convinced that plaintiff was in the house upon their arrival, then a reasonable finder of fact could conclude that once officers arrived at plaintiff's house, a warrantless entry was not needed to ensure that plaintiff could not escape and/or carry out his threat.[10]  In short, on the current record, it is unclear whether simple monitoring of plaintiff's home during the time needed to obtain a warrant would suffice to ensure that plaintiff was not an imminent threat to public safety.  Therefore, it is unclear whether exigent circumstances existed to justify Jacobson's warrantless entry into plaintiff's home.

It is also not clear that exigent circumstances developed at any point after the officers entered the home.  Jacobson testified that he could hear plaintiff talking on the phone behind a closed door while not responding to police efforts at communication.  However, Jacobson did not indicate whether he could hear the substance of the phone conversation, or (if he

---

[10]  While the facts establish the Jacobson considered the presence of plaintiff's car in his driveway as reason to believe that plaintiff was inside his house, Jacobson Aff. ¶6, absent from the record is any indication of how confident officers were in this belief.

could hear the conversation) why it caused him to fear for the public's safety or plaintiff's own safety.  Facts pertaining to how Jacobson perceived the nature of the phone conversation (i.e., whether plaintiff was speaking with an accomplice; plaintiff was threatening to hurt himself; plaintiff's voice was calm; plaintiff's voice was loud and threatening) are material to whether exigent circumstances existed to justify Jacobson's forced, warrantless entry through a door inside plaintiff's house.  Without these material facts, the Court cannot make a summary judgment determination that exigent circumstances arose after officers entered plaintiff's house.

Since the undisputed facts do not establish that exigent circumstances justified Jacobson's warrantless entry into plaintiff's house, or Jacobson's forced entry through a door inside the house, the Court now turns to the question of qualified immunity.

3. Qualified Immunity

Jacobson argues that he is entitled to summary judgment on plaintiff's improper search and seizure claims due to qualified immunity.  Although plaintiff does not address this argument in his opposition brief, the Court finds that the facts in the record are not strong enough to grant Jacobson qualified immunity.

16

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Messerschmidt v. Millender, --- U.S. ---, 132 S. Ct. 1235, 1244, 182 L. Ed. 2d 47 (2012)(quoting Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009)).  Qualified immunity applies if the official's mistake is a mistake of law, mistake of fact, or mistake based on mixed questions of law and fact. Palmieri v. Kammerer, 690 F. Supp. 2d 34 (D. Conn. 2010)(citing Pearson, 555 U.S. at 231).  The purpose of qualified immunity is to protect officials when they must make difficult "on-the-job" decisions. Id. (citing Zieper v. Metzinger, 474 F.3d 60, 71 (2d Cir.2007)).  Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law" by giving "ample room for mistaken judgments." Id. (quoting Hunter v. Bryant, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L. Ed. 2d 589 (1991)).

In the Second Circuit, qualified immunity analysis consists of a three-step inquiry examining whether there is an alleged violation of a constitutional right, whether the right was clearly established at the time of the conduct, and – if the right was clearly established – whether the defendant's actions were objectively reasonable.  Id. (citing Harhay v. Town of

Ellington Bd. Of Educ., 323 F.3d 206, 211 (2d Cir. 2003)).
Summary judgment on qualified immunity grounds is inappropriate
if there are disputed facts that are material to determining
reasonableness. Id. (citing Yorzinski v. Alves, 477 F. Supp. 2d
461, 469 (D. Conn. 2007)).

  At the first step of the inquiry, plaintiff clearly alleges
that Jacobson violated his constitutional rights by conducting a
warrantless search and arrest, and by damaging property while
forcing entry through a door.  The second step is also met
because these rights were clearly established at the time of
conduct. See e.g., Payton v. New York, 445 U.S. 573, 586, 100 S.
Ct. 1371, 1380, 63 L. Ed. 2d 639 (1980)("It is a 'basic
principle of Fourth Amendment law' that searches and seizures
inside a home without a warrant are presumptively
unreasonable")(footnote omitted); and Notice v. Koshes, 386 F.
Supp. 2d 23, 27 (D. Conn. 2005)(stating that unreasonable
property damage may constitute seizure in violation of the
Fourth Amendment).

    At the third step, the Court considers whether the
undisputed facts are sufficient to establish that Jacobson's
actions were objectively reasonable.  While Jacobson believed
that plaintiff was wanted by the New London Police Department
for threatening to blow up the social security building,
Jacobson's affidavit does not explain why he thought plaintiff

was still an imminent threat to public safety after officers
arrived at the house.  It is possible that reasonable officers,
despite seeing plaintiff's car in his driveway and believing him
to be inside the house, could have nonetheless feared that
plaintiff left the house by some other means, or that plaintiff
was able to coordinate an attack from inside his house.
However, in his affidavit, Jacobson does not suggest that he
believed either possibility was realistic, or that either
possibility served as his reason for entering the house without
a warrant.  Thus a qualified immunity analysis of these
possibilities is premature.  While qualified immunity grants
officers wide latitude to make on-the-job mistakes, it does not
provide protection for every warrantless home search and arrest
made when investigating a suspect who reportedly made a threat.
Nothing in the record distinguishes plaintiff's alleged threat
or behavior in such a way that it should have caused reasonable
officers to believe that taking the time to obtain a warrant
would jeopardize the public's safety or the safety of any
individual.[11]  Accordingly, summary judgment is DENIED on

---

[11] By way of comparison, the Supreme Court recently found that
officers were entitled to qualified immunity for their
warrantless home entry to investigate a student's alleged threat
to shoot up the school; but the Court's decision rested on a set
of facts far more comprehensive than the present set.  Ryburn v.
Huff , --- U.S. ---, 132 S. Ct. 987, 181 L. Ed. 2d 966
(2012)(per curiam).  In Ryburn, the court did not merely rely on

plaintiff's claims that Jacobson violated his Fourth Amendment rights by subjecting him to an improper search and seizure.

Conclusion

For the reasons stated, defendant Gregg Jacobson's Motion for Summary Judgment **[Doc. #74]** is **GRANTED** on plaintiff's excessive force claims and **DENIED** on plaintiff's improper search and seizure claims.  This is not a Recommended Ruling.  The parties consented to proceed before a United States Magistrate

---

the nature of plaintiff's alleged threat and the fact that the student's mother had initially refused to communicate with the officers, but on the following detailed circumstances: Prior to their warrantless entry, officers had conducted an investigation and found that the student's frequent absences from school and history of being bullied were characteristic of school shooters; a classmate reported that he believed the student was capable of a school shooting; plaintiff's mother hung up when officers identified themselves on the phone; when plaintiff's mother eventually went outside to speak with officers, they found her behavior and responses "extremely unusual" and "odd"; when they asked her if there were any guns in the house, she responded by "immediately turn[ing] around and r[unning] into the house"; and the first officer into the house specifically stated that, because of the mother's behavior in response to the last question about guns, he was "scared because [he] didn't know what was in that house." Id. at 987-89 (brackets and quotations original).  Taking all facts into consideration (especially the mother's reaction to the question pertaining to whether there were any guns in the house), the Court found that there was an objectively reasonable basis for the officers to fear that violence was imminent so that warrantless entry into the home was permissible under the Fourth Amendment. Id. at 992.

In contrast, the present record does not include any facts, beyond the nature of plaintiff's alleged threat and his failure to respond to communication efforts, to support Jacobson's belief that plaintiff presented an "immediate" threat. Jacobson Aff. ¶13.

Judge [Doc. #76] on July 19, 2012, with appeal to the Court of Appeals. Fed. R. Civ. P. 73(b)-(c).

ENTERED at Bridgeport this 13th day of September 2012.


_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE